## OSIUS v. DAVIS.

(Circuit Court of Appeals, Sixth Circuit. November 6, 1907.)

INSURANCE—RIGHT TO PROCEEDS OF LIFE POLICY—EVIDENCE CONSIDERED.

Evidence considered in a suit of interpleader between the widow and a former partner of a decedent to determine the right to the proceeds of a policy of insurance on his life, which was by its terms payable to his estate, but by an agreement between the partners was to be held for the benefit of the partnership, and *held* to sustain the claim of the widow that the partnership had been dissolved some months prior to her husband's death, and all matters between the partners settled.

Appeal from the Circuit Court of the United States for the Eastern District of Michigan.

T. B. Bradfield, for appellant.
C. W. Nichols, for appellee.

Before LURTON, SEVERNS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was a bill of interpleader filed by the New York Life Insurance Company against Rudolph Osius and Nellie Belle Davis, who by stipulation have become, respectively, the complainant and defendant in the litigation. The matter in dispute is the amount of a policy of $5,000, written by the New York Life Insurance Company, December 30, 1903, upon the life of William Francis Davis, husband of the defendant, who died September 25, 1904. The policy was payable "to the executors, administrators or assigns of the insured, or to such beneficiary as may have been duly designated." It also provided that the insured might change the beneficiary by written notice to the company, but that no designation or change of beneficiary should take effect until indorsed on the policy by the company at the home office. The amount due under the policy has been paid into the court below. The bill of interpleader was brought against Mrs. Davis "personally and as executrix of the last will and testament of her husband." Rudolph Osius was made a defendant "as sole surviving member of the late copartnership duly organized and doing business under the firm name of the American Dental Syndicate," which was composed of William Francis Davis and Rudolph Osius, the latter being general manager, while Davis was the business manager. Rudolph Osius claims the amount of the policy as sole surviving member of the American Dental Syndicate, claiming that this policy and one upon his own life were taken out by the syndicate, the premiums paid by the syndicate, and that there was an agreement that the policy was to be for the benefit of the syndicate and payable to the surviving

member. Nellie Belle Davis was the executrix of her husband's will and his sole legatee, and as such she claims the amount of the policy. The court below heard the testimony, and in a considered opinion held that the firm known as the American Dental Syndicate was dissolved, and its assets divided, on May 21, 1904, some four months before Davis died, and therefore the policy, according to its terms, was payable to her as executrix and sole legatee. From this decree there is an appeal to this court.

Prior to March 23, 1903, Rudolph Osius owned and operated dental establishments in the cities of Grand Rapids, Battle Creek, Flint, and Lansing, Mich., under the name of the "American Dental Syndicate." On that date William F. Davis, who was a lawyer living in Lansing, became his partner. Under the agreement Davis was to pay to Osius the sum of $5,000, $1,000 down, and $4,000 from the earnings to which Davis would be entitled less his salary; and it was expressly agreed that the title to one-half of the business was to remain in Osius until the promissory note of $4,000 was paid in accordance with its terms. Osius was to be the general manager and Davis the business manager of the firm, the former to receive $50 per week and the latter $40 per week. While the business of this copartnership was going on, two life insurance policies of $5,000 each were taken out, one by Osius and one by Davis, December 30, 1903. Frederick Cody was the agent of the life insurance company. The premiums on the two policies amounted to $269.20, being $128.75 for the Davis policy, and $140.45 for the Osius policy. Cody paid the premiums, and then settled with the policy holders. The premium on the Davis policy was partly paid by the partnership and partly by Davis himself, the last payment being $46.10, made on July 28, 1904. The receipt from Cody to Davis shows that it was in full settlement of the balance of the premium on his policy, and also in full settlement of his interest in the note given under the agreement dated December 31, 1903. On March 5, 1904, while the firm called the American Dental Syndicate was in existence, an agreement was made between Osius and Davis which provided that the policies should be paid to "the American Dental Syndicate, and not to their personal heirs or assigns," the reason as stated being "the premiums on these policies being paid out of the funds of the American Dental Syndicate, and the policies were taken out designedly for the protection of the American Dental Syndicate." While it is not disputed that this agreement was made, no indorsement was made on the policy, nor was there any notice of a change of beneficiary in accordance with its terms. The policy remained payable to the personal representatives of Davis, and was in his possession at the time of his death.

Such being the situation, the question in this case is whether, as alleged by Mrs. Davis, the partnership between her husband and Osius was dissolved on May 20 or 21, 1904. If it was, then the New York Life Insurance policy became payable, according to its terms, to her as executrix and sole legatee of her husband. We have carefully read all there is in the record upon this subject, and are clear in the opinion that the court below very properly held that Mrs. Davis had sustained the burden of proving the affirmative upon the issues of the case, namely, that the partnership had been dissolved by mutual consent and

a full settlement and adjustment of its affairs had been made. The court below has referred in some detail to the facts which appear in the record and support its conclusions. It is unnecessary to go over these. The statements of Seth Davis and Carmer are quite inconsistent with the theory that the partnership continued to exist after May 21, 1904. After the agreements of May 20 and May 21, 1904, Davis withdrew from the American Dental Syndicate, ceased to be its business manager or have authority to bind it in any way, and restricted himself to the Battle Creek office which he purchased from Rudolph Osius, the other member of the defunct firm. In the agreement of May 20, 1904, made at Grand Rapids, Davis expressly relinquished all his right, title, and interest in the American Dental Syndicate, "ceased to draw salary or have anything to do with the management of the said American Dental Syndicate, the same being turned over to Dr. Rudolph Osius." On May 21, 1904, the National City Bank was notified that after that date the signature of Dr. Rudolph Osius alone would be necessary on checks of the American Dental Syndicate. On July 10, 1904, Ossius wrote a letter to Davis which practically admits the dissolution and the fact that the insurance policies had been treated as personal assets. Speaking of another agreement, Osius says, "It certainly only applied to you when a partner in this firm"; the inference being that Davis had ceased to be such partner. Then he says:

"But kindly remember that I particularly except the life insurance account which you and I have, but showed a willingness on my part to pay for half of the same."

Apparently this refers to the statement by Davis that Osius had agreed to pay all bills due from the business, and the exception made of the insurance account was made by Osius. although he says he had shown a willingness to pay for his half of that account. He also asserts that he has not only been extremely square with Davis at all times, but "particularly so at their dissolution."

These and other facts which appear on the record and have been referred to by counsel in the briefs and on the argument satisfy us that the partnership was dissolved months before Davis died. and that there was no thought at that time that the policy on Davis' life was being carried by the partnership or for its benefit. The claim now made by the surviving partner appears to be an afterthought.

The decree is affirmed.